## LLOYD CARDWELL v. STATE OF NEBRASKA.

FILED SEPTEMBER 19, 1900. No. 11,277.

1. **Instructions.** Instruction copied in the opinion examined, and found applicable to the evidence, and to correctly state the law.

2. ———. Instructions requested which are covered substantially by those already given may properly be refused.

3. ———. An instruction requested not applicable to the evidence is properly refused.

4. **Rape:** SEXUAL ACT ADMITTED: FAILURE OF PROSECUTRIX TO COMPLAIN: THREATS OF PRISONER: EVIDENCE: VERDICT. In a prosecution for rape, the defendant claimed that the act of sexual intercourse, which was admitted, was voluntary and with the consent of the prosecutrix; the state's evidence tended to prove that, at the time the act was committed, the defendant threatened to kill the prosecutrix if she did not submit, and that she submitted to the act through fear for her life or of great bodily injury, and that defendant after the act threatened to kill her if she said anything about it to any one; that the prosecutrix, through fear, by reason of such threats, remained silent for

several days before complaining of the alleged outrage, and during such time remained at the home of the defendant; the jury found the defendant guilty as charged. *Held*, That, under all the facts and circumstances as disclosed by the record, the verdict was supported by the evidence, and was sufficient to establish the commission of the crime as alleged.

5. **Jury Triers of Fact.** The jury are the triers of fact, and it is for them to ascertain the truth of the matters in controversy upon which there is a contradiction and conflict in the evidence.

6. **Statements of Prosecutrix in Presence of Defendant.** Statements made by the prosecutrix in a conversation with, and in the presence of, the defendant regarding the alleged offense, *held* properly admissible in evidence.

ERROR to the district court for Sheridan county. Tried below before WESTOVER, J. *Affirmed*.

*W. W. Wood*, for plaintiff in error.

*Constantine J. Smyth*, *Attorney General*, and *Willis D. Oldham*, *Deputy*, *contra*.

HOLCOMB, J.

Exceptions are taken to a certain instruction given by the court on its own motion, and to its refusal to give others requested by the defendant on the trial of the action. We find no substantial basis for the exceptions thus taken. The instruction given and excepted to, fairly states the law and was applicable under the evidence. It is as follows:

"If you believe from the evidence in this case that an act of sexual intercourse did take place between the defendant and the prosecuting witness, as averred in the information, then the question as to whether or not she did voluntarily consent to such act, is a question of fact for you to determine from the evidence in this case. The defendant insists that she did voluntarily consent thereto, and that he used no force or coercion of any kind to compel such consent, but that she submitted to his desires upon his request alone; while the prosecution insists

35

that she did not voluntarily consent, but that she resisted to the full extent of her ability, and only yielded when her will was overpowered, and if she finally consented to her fate, it was against her will and for fear of more serious consequences. You are to say from the evidence which, if either, is right, and if, after giving due weight to all the evidence, you find that the prosecuting witness did voluntarily consent to such act of intercourse, and not under coercion, you should acquit. But, if you find from the evidence, beyond a reasonable doubt, that the act was by force, or that the prosecuting witness submitted through fear of receiving great bodily injury at the hands of the defendant and that the act was against her will, and find the other facts averred in the information established beyond a reasonable doubt, you should convict."

We do not agree with contention of counsel that the instruction fails to say that the act must be against the will of the prosecutrix.

The instructions asked and refused were substantially covered by other instructions given, and the giving thereof would have subserved no beneficial purpose. The last instruction requested and refused was not applicable under the evidence, even if it were a correct expression of the law, which is doubted by the writer. We think the instructions as a whole fairly stated the law, and were eminently fair to the defendant. He has, in our opinion, no cause for complaint on account of the giving or refusal to give the instructions of which complaint is made, and his objections in respect to the same are overruled.

The objection that the verdict and judgment are not sustained by sufficient evidence presents a more serious question. The defendant was found guilty and sentenced to imprisonment for the crime of rape. On the trial of the case, the defense was conducted on the theory that sexual intercourse with the prosecutrix, which was admitted, was had voluntarily and with her consent. The theory of the prosecution was that the act was accom-

plished by force and against the will of the prosecutrix, who was overcome with fear by threats alleged to have been made by the defendant to take her life if she did not submit to his desires. The salient features as developed by the testimony are about as follows: The prosecutrix had no settled home; was about nineteen years of age, and most of the time worked for others as a domestic; when not at work, she stayed with her stepmother, who was also an aunt, her father at the time being separated from her stepmother. The defendant's father was then making his home with the stepmother, and at his solicitation the prosecutrix went to the home of the defendant about eighteen miles in the country, to assist in household work during the anticipated illness of defendant's wife in childbirth. While driving to defendant's house, and when within about two miles thereof, the act was committed. At the time it was quite dark. The prosecutrix testifies in substance that the defendant made an indecent proposal which she refused, saying, "No, sir. I'm not that kind"; that the defendant said he was one of those kind of fellows when he went after anything he was going to have it; that he then took out a knife and threatened to kill her if she did not submit; that he took her out of the buggy and threw her on the ground; that he held her down so she could not get up, and that she bit him; that after the act, he "picked me up and put me in the buggy." He then said, "If you dare to tell my wife or any one else, I will kill you." When asked what effect, if any, it had on her when he drew the knife and threatened her, she answered, "I was afraid of my life." She went with the defendant to his home, where she stayed about eleven days before saying anything to anyone about the alleged outrage. She then first mentioned it to the mother of defendant's wife, who lived near the defendant. It is contended by defendant that she remained, not only silent, but friendly with him, until after he had told his wife, and that thereafter she first complained to the wife's mother. The evidence of the pros-

ecutrix is in a manner corroborated by a witness on behalf of the state, who testified that, in a conversation with the defendant a short time after the occurrence, in a mutual exchange of confidences, the defendant said, "I brought May [the prosecutrix] home the other night to help my wife. * * * I got a bottle of alcohol and weakened it little, * * * and gave her a drink * * * She got to feeling pretty good and I asked her to let me have some. She fought pretty hard and slapped me and she threatened to have me arrested, * * * and I kept on working her and finally got her worked, finally got her wore down so she could not help herself, * * * she was trembling all over. * * * After we got up I told her that if she told my wife, I would kill her."

Opposed to this view of the case was the evidence of the defendant, to the effect that the act was voluntary on the part of the prosecutrix; also, her action and conduct after the commission of the alleged offense, which seem almost inexplicable; the evidence of other witnesses as to undue familiarity of the prosecutrix with other men; the testimony of one that she had admitted to him that she had had intercourse with another man; and that of one other witness that he had had intercourse with the prosecutrix. This evidence was denied in rebuttal, and the state offered evidence tending to impeach some of defendant's witnesses as to their reputation for truth and veracity.

The evidence was conflicting and of a most contradictory character. Much of it was obviously false and willfully so. The jury heard all of the testimony. They had an opportunity of seeing the different witnesses, hearing them testify, observing their demeanor on the witness stand, and, from all the circumstances connected with the trial, were enabled to attach such weight to the testimony of each as it seemed fairly entitled to. They were the triers of fact, and their judgment should not be disturbed if supported by sufficient competent evidence. The case was submitted to them fairly and im-

partially by the court. They were the searchers of the truth as to the matters in controversy, and having found it, declared it in their verdict.

It is contended by the defense that, because of the conduct of the prosecutrix after the alleged offense, the delay in making disclosure, and other circumstances in relation thereto, the evidence is insufficient to sustain a verdict and judgment for the crime of rape. We are cited to the cases of *Mathews v. State*, 19 Nebr., 330, and *Richards v. State*, 36 Nebr., 17, in support of counsel's contention. In the *Mathews Case* it was held, first, that where the offense is explicitly denied by the defendant, there must be corroborating testimony; and, second, that the evidence in that case, admitting all that was said by the prosecutrix to be true, was not sufficient to establish the crime charged. The testimony in that case applied solely to the resistance offered, and there was no claim that the prosecutrix was overcome by threats, or that she submitted through fear of death or great bodily harm. The case at bar is distinguishable from the one referred to, in that corroborating evidence is not wanting, and that the failure to make greater resistance is claimed to have been prevented by reason of threats made by the defendant; that the fear of the prosecutrix of death or great bodily harm by reason of such threats, not only precluded more active resistance, but forced unwilling submission on her part.

In the *Richards Case* no complaint was made for nearly seven months after the alleged offense, and not until concealment was no longer possible because of the pregnancy of the prosecutrix. It is there held that the charge, under such circumstances, could not be sustained unless accompanied by strong corroborating proof of the commission of the crime. The case at bar does not come within the rule announced in that case.

It is to be conceded that it appears passing strange and almost unaccountable that the prosecutrix should remain at defendant's house for the time she did. She was, how-

ever, without a home. The situation at her stepmother's, as developed by the evidence, was not such as to justify her in expecting aid and sympathy in her troubles there. She apparently had no place to which she might go with any assurance of shelter or protection. The threats made by the defendant, if true, might reasonably be expected, under the peculiar circumstances of the case, to serve as a much more powerful restraint on her actions and words than would ordinarily be the case. Her dread of violence and probable death may have been, and probably was, sufficient to overcome the desire and tendency naturally arising to make swift complaint, and bring the ravisher of her person to merited punishment. Accepting her version of the matter, her after conduct is not inconsistent with defendant's guilt of the offense in the manner charged.

While there is some evidence of friendliness and familiarity with the defendant after the transaction, this is strenuously denied by the prosecutrix, and her testimony in this regard is not without color of support. It is shown on rebuttal that one of the defendant's witnesses had said, "I mistrusted there was something wrong and I made Lloyd [the defendant] tell me all about it after we got to the timber, and he told me what he had done."

While there are circumstances connected with the case, as disclosed by the record, which render it difficult to ascertain the truth as to the charge laid against the defendant, we are of the opinion, from an examination of the entire record, that there is sufficient competent evidence to support the verdict of the jury, and establish the commission of the offense charged.

The next complaint is that the court erred in the admission of certain of the testimony of a Mrs. Doty, who testified on behalf of the state, the objectionable testimony relating to certain statements with reference to the alleged offense made by the prosecutrix in a conversation with the witness. The record discloses that these statements were made in a conversation participated in

by the defendant, his wife, the prosecutrix and the witness testifying. It was with, and in the presence of, the defendant, regarding the transaction, and was, we think, competent evidence in the case.

We find no error in the case warranting a reversal of the judgment of the trial court, and the same is accordingly

AFFIRMED.